**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN R. SOTO, | Civil Action No. 11-3631 (FLW) |
| Petitioner, | |
| v. | **OPINION** |
| GREG BARTKOWSKI, | |
| Respondent. | |

**APPEARANCES**:

> JUAN R. SOTO, #301232/ 192899C
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625
> Petitioner *Pro Se*

> MICHAEL D. GRILLO, ASSISTANT PROSECUTOR
> MERCER COUNTY PROSECUTOR
> P.O. Box 8068
> Trenton, New Jersey 08650
> Attorneys for Respondents

**WOLFSON, District Judge**:

Juan R. Soto filed a pro se Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Soto challenges a judgment filed in the Superior Court of New Jersey, Mercer County ("trial court"), on May 4, 1998, as amended on remand, after a jury found him guilty of aggravated manslaughter, felony murder, robbery, and other charges. *See State v. Soto*, 340 N.J. Super. 47 (App. Div.), *certif. denied,* 170 N.J. 209 (2001). The State filed an Answer, a Supplemental Answer, and supplement to the record, and Soto filed a Reply. After carefully reviewing the

matter, this Court will dismiss the Petition on the merits and decline to issue a certificate of appealability.

## I.   BACKGROUND

On January 30, 1996, a grand jury of the State of New Jersey, sitting in Mercer County, returned an indictment charging Soto with first-degree murder, felony murder, first-degree robbery, second-degree conspiracy to commit robbery, first-degree kidnapping, second-degree burglary, and second-degree and third-degree possession of a weapon for an unlawful purpose. (Indictment, ECF No. 12-21 at 72-79.)   After a trial, a jury found Soto not guilty of first-degree murder, guilty of aggravated manslaughter, guilty of felony murder, guilty of robbery, guilty of conspiracy to commit robbery, guilty of kidnapping, guilty of burglary, and guilty of two counts of possession of a weapon (a shotgun and a crossbow) for an unlawful purpose.[1]   (ECF No. 12-21 at

---

[1] The case arose in January 1996 when Soto, Ivelisa Figueroa, Martin Robles, and Elvis Terron agreed to rob Mohamed Maghoub, Figueroa's acquaintance, who owned a used car lot, a taxicab company, and several rental properties in Trenton.   *See Soto,* 340 N.J. Super. at 54-57.   On the evening of January 30, 1996, while Figueroa was visiting Maghoub at his house, Soto, Robles, and Terron entered Maghoub's house, with Soto carrying a shotgun and Robles carrying a crossbow. *Id.*   Maghoub jumped at Soto, grabbing the shotgun, and while the two wrestled on the floor, the gun went off, shooting Figueroa in the thigh.   *Id.*   At some point, Robles gained control of the shotgun and began hitting Maghoub on the head with it.   Soto ran upstairs to look for a briefcase; when Soto returned downstairs, he took a wallet and jewelry of Maghoub, who was on the floor, but still breathing.   *Id.*   The group fled through the backdoor.   *Id.*   The next day, after Figueroa found out from Perez, a friend who had read the newspaper, that Maghoub was dead, she turned herself in to the police.   *Id.*   Two days later, the police arrested Soto at the ticket counter in the Philadelphia Airport.   *Id.*   After Soto read and signed a *Miranda* form in Spanish, Soto admitted to Det. Maldonado, a Spanish-speaking Trenton police officer, that he was responsible for the robbery but not the murder of Maghoub.   *Id.*   Soto eventually executed a waiver of extradition form and during the drive to Trenton, Soto told Maldonado that he was responsible for having the shotgun but not for Maghoub's death.   *Id.*   At the Trenton Police Headquarters, Soto gave a formal statement to Maldonado, explaining the events and admitting that he had the shotgun when they entered Maghoub's home, that Maghoub was badly beaten, and that Soto searched through

80-82.)   The trial court imposed an aggregate sentence of life in prison with a 30-year period of parole ineligibility.   (Judgment, ECF No. 12-21 at 83-85.)   Soto appealed.   In a published opinion, on June 13, 2001, the Appellate Division reversed the kidnapping conviction because the evidence did not support a conviction for kidnapping, and affirmed the conviction and sentence in all other respects.[2]   *See Soto,* 340 N.J. Super. at 75.   The New Jersey Supreme Court denied certification on October 24, 2001.   *See State v. Soto,* 170 N.J. 209 (2001) (table).

On December 10, 2002, Soto filed a *pro se* petition for post-conviction relief ("PCR petition").[3]   (ECF No. 1 at 3.)   The Law Division denied relief by order filed September 14, 2006.   (ECF No. 12-28 at 114.)   Soto appealed, and on January 15, 2008, the Appellate Division remanded (without objection from the State) for the Law Division to make findings of fact and conclusions of law regarding the adequacy of defense counsel's pretrial contacts with Soto; the court affirmed the Law Division's rejection of Soto's other claims.   (ECF No. 25-1 at 2, 11.)   On April 21, 2008, the New Jersey Supreme Court denied certification.   *See State v. Soto,* 195 N.J. 422 (2008) (table). On June 19, 2008, Superior Court Judge Thomas P. Kelly conducted an evidentiary hearing, at which W. Les Hartman, the attorney who represented Soto, and Soto testified.   (ECF No. 25-3.)   Judge Kelly thereafter denied the relief on this ineffective assistance

---

Maghoub's pockets.  *Id.*  The Medical Examiner determined that Maghoub's death was due to massive cranial cerebral injuries caused by blunt force trauma.  *Id.* at 58.

[2]  The reversal of the kidnapping conviction did not affect the aggregate sentence because the trial court had imposed the life sentence, with a 30-year period of parole ineligibility, on the felony murder conviction and a concurrent sentence of 30 years, with a 15-year period of parole ineligibility, on the kidnapping conviction.  *See Soto,* 340 N.J. Super. at 53.

[3]  The Appellate Division observed that Soto filed his PCR petition in December 2002.  (ECF No. 25-1 at 8.)  Soto states in his § 2254 Petition that the filing date was December 10, 2002.  (ECF No. 1 at 3.)

3

of counsel claim.   (ECF No. 25-4 at 1.)   Soto appealed, and on November 10, 2010, the Appellate

Division affirmed.   (ECF No. 25-1.)   On May 12, 2011, the New Jersey Supreme Court denied

certification.   *See State v. Soto,* 206 N.J. 64 (2011) (table).

Soto signed the § 2254 Petition ("the Petition") presently before this Court on June 15,

2011.   The Clerk received it on June 21, 2011.   The § 2254 Petition raises eight grounds, which

are set forth here verbatim:

> Ground One:   Petitioner's Statement was Obtained in Violation of the Uniform
> Extradition Act.

> Ground Two:   Petitioner's Right to Confrontation was Violated by Testimony
> Regarding Inadmissible Hearsay.

> Ground Three:   Petitioner was Deprived of a Fair Trial by Admission of the Prior
> Inconsistent Statements of a Witness[, Tomoteo Terron, the Father of two of
> Petitioner's Co-Defendants].

> Ground Four:   The Cumulative Effect of Errors Deprived Petitioner of a Fair Trial.

> Ground Five:   Petitioner was Deprived of Due Process Because One of the Three
> Alternative Felony Theories Submitted as the Basis for the Felony Murder
> Conviction is not Supported by the Evidence.

> Ground Six:   Trial Counsel was Ineffective Because He Used Co-Defendant
> Robles to Interpret for Petitioner.

> Ground Seven:   Trial Counsel was Ineffective for Failing to Adequately Consult
> and Communicate with Petitioner.

> Ground Eight:   Prosecutor's Comments Deprived Petitioner of a Fair Trial.

(Petition, ECF No. 1 at 5-23.)

After Soto was notified of his rights pursuant to *Mason v. Meyers,* 208 F.3d 414 (3d Cir.

2000), the Court directed Soto to show cause why the Petition should not be dismissed as time

barred because the face of the Petition indicated that the Petition was untimely.   (ECF Nos. 4, 5.)

In his response to the Order to Show Cause, Soto argued that he filed his PCR petition on December 10, 2002, after 322 days had elapsed on the one-year statute of limitations under 28 U.S.C. § 2244(d)(1). (ECF No. 6 at 2.) He argued that the 365-day limitations period was statutorily tolled from December 10, 2002, until May 12, 2011, the date on which the New Jersey Supreme Court denied certification on the Appellate Division's November 10, 2010, opinion affirming the order on remand. Soto maintained that the § 2254 Petition was timely because he handed it to prison officials for mailing to the Clerk on June 15, 2011, with nine days remaining on the statute of limitations.

In light of Soto's Response, this Court ordered the State to answer the Petition and file the record. (ECF No. 7.) On July 16, 2012, the State filed an Answer, arguing that the Petition is time barred, that the Petition generally fails to state a claim upon which relief can be granted, and that Soto's grounds were considered and rejected by the New Jersey courts. (ECF No. 12.) Because the Answer did not specifically respond to the grounds raised in the Petition or otherwise comply with the Habeas Rules, this Court ordered the State to file a supplemental answer and supplemental record. (ECF No. 19.) The State filed a Supplemental Answer. (ECF No. 20.) Nevertheless, on June 13, 2014, this Court determined that the record filed by the State was incomplete and ordered the State to file a second supplemental record consisting of: (a) the Appellate Division opinion filed on January 15, 2008, regarding Soto's appeal from the September 14, 2006, order denying post-conviction relief; (b) the order of the New Jersey Supreme Court filed on April 21, 2008; (c) the transcript of the evidentiary hearing conducted on June 19, 2008; (d) the Appellate Division opinion dated November 10, 2010; and (e) the order of the New Jersey

Supreme Court filed on May 12, 2011.   The State filed these documents on July 8, 2014.   (ECF No. 25.)

## II.   TIMELINESS

In the Answer, the State asserts that the Petition should be dismissed as untimely.   (ECF No. 12.)   In calculating the 365-day statute of limitations under 28 U.S.C. § 2244(d), the State maintains that

> Petitioner's post conviction relief process ended November 10, 2010, when post conviction relief was denied by the Appellate Court.   At that time, Petitioner's habeas filing period began running again, with less than two months remaining. However, Petitioner waited over seven months, until June 15, 2011, to file this Petition.

(Answer, ECF No. 12 at 7.)

In calculating the statute of limitations, the State apparently did not realize that Soto filed a petition for certification of the November 10, 2010, Appellate Division opinion, and that the New Jersey Supreme Court denied certification on May 12, 2011.   *See State v. Soto,* 206 N.J. 64 (2011) (table) (ECF No. 25-5).   Because Soto had 43 days remaining on his statute of limitations period when the New Jersey Supreme Court denied certification on May 12, 2011, and he handed his § 2254 Petition to prison officials for mailing 34 days later, on June 15, 2011, the Petition is timely.

## III.   STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court to grant a habeas petition to a state prisoner.   *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).   Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. §

2254(a).   Where a state court adjudicated petitioner's federal claim on the merits,[4] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).   The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.   *See Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.   *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall,* 134 S.Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."   *Williams*, 529 U.S. at 405-06.   Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the

_____

[4] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel,* 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."   *Id.*, 529 U.S. at 413.

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."   29 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).   Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).

## IV.  DISCUSSION

A.    Violation of Uniform Extradition Act (Ground One)

In Ground One, Soto claims that his statements to police were obtained in violation of the Uniform Extradition Act.   He asserts that the procedure the police followed "failed to comport with the Uniform Extradition Act because the officers failed to explain to petitioner his right to contest extradition before a judge and the officers failed to consult a judge about the validity of the waiver [of extradition]."   (ECF No. 1 at 6.)   The State argues that Soto is not entitled to habeas relief on this ground because it was adjudicated by the Appellate Division on direct appeal and Soto has not shown that the Appellate Division's ruling was contrary to or an unreasonable application of Supreme Court precedent, or based on an unreasonable determination of the facts.

Soto argued on direct appeal that his confessions to police should have been suppressed because they were the result of an improper extradition from Philadelphia to Trenton, in that the

8

police failed to adequately explain his right to contest extradition before a judge and failed to consult a judge regarding the validity of his waiver of extradition.  The Appellate Division rejected Soto's challenge to the admission of his confession on the ground that the Uniform Criminal Extradition Act, which was enacted in New Jersey and Pennsylvania, expressly authorized the "accused person to return voluntarily and without formality to the demanding state," N.J. STAT. ANN. § 2A:160-30, and Soto knowingly and voluntarily waived formal extradition.  *See Soto,* 340 N.J. Super. at 61 ("We are satisfied there was sufficient credible evidence to support the judge's findings that defendant knowingly and voluntarily waived extradition.  Defendant was informed of his right to have a hearing and voluntarily waived that right.  Consequently, the trial judge properly denied defendant's motion to suppress.") (citation omitted).

The Extradition Clause of the U.S. Constitution provides:  "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."   U.S. Const. art. IV, § 2, cl. 2.   The Extradition Act, 18 U.S.C. § 3182, provides procedures to carry out the constitutional mandate.  *See New Mexico ex rel. Ortiz v. Reed*, 524 U.S. 151, 152 (1998); *Cuyler v. Adams*, 449 U.S. 433, 443 (1981).   The Extradition Act provides that, when the executive authority of one state demands of the executive authority of another state a person as a fugitive from justice, and produces an indictment or affidavit made before a magistrate which charges the person with a crime, the executive authority of the asylum state is required to arrest the fugitive, notify the demanding state, and confine the fugitive for a minimum of 30 days.   *See* 18 U.S.C. § 3182.

9

New Jersey and Pennsylvania have enacted the Uniform Criminal Extradition Law ("UCEL").  *See* N.J. STAT. ANN. § 2A:160-1 *et seq*.; 42 Pa.C.S.A., § 9121-9171.  Like the Extradition Act, UCEL requires the governor of the asylum state to honor a proper demand for a fugitive who has fled the demanding state.  *See* 18 U.S.C. § 3182; N.J. STAT. ANN. § 2A:160-11, 15.  If the governor of the asylum state decides that the demand is proper, then the governor must sign a warrant authorizing a peace officer to arrest the fugitive and deliver him to an agent of the demanding state.  N.J. STAT. ANN. §§ 2A:160-15, 16.  The officer in the asylum state who executes the arrest warrant may confine the fugitive in a county jail, and "the keeper of such jail must receive and safely keep the prisoner until the officer or person having charge of him is ready to proceed on his route."  N.J. STAT. ANN. § 2A:160-20.

Soto argues that his waiver of extradition was invalid (and his confession was, therefore, inadmissible) because there was no evidence showing that he was explicitly informed of his right to appear before a judge and fight extradition.  Soto is correct that, under the terms of UCEL, a fugitive in the asylum state may not be delivered to the demanding state unless he is first taken before a judge who informs him of the demand and the crime with which he is charged, and asks him if he desires to test the legality of his arrest.  *See* N.J. STAT. ANN. § 2A:160-18.  If he indicates that he desires to test the legality of his arrest, then the UCEL requires the judge in the asylum state to fix a reasonable time within which the fugitive may apply for a writ of habeas corpus.  *Id.*

In this case, New Jersey did not violate the Extradition Clause or the laws implementing it because the UCEL is *not* the only way in which one state may gain custody of a person in another state for the purposes of prosecution.  The plain language of the UCEL provides that voluntary

10

turnover is an approved alternative mechanism.  *See* N.J. STAT. ANN. § 2A:160-30 ("Nothing in this section shall be deemed to limit the rights of the accused person to return voluntarily and without formality to the demanding state, nor shall this waiver procedure be deemed to be an exclusive procedure or to limit the powers, rights or duties of the officers of the demanding state or of this state.")   The New Jersey Appellate Division correctly held that nothing in the UCEL prohibited New Jersey officials from simply taking Soto (voluntarily) to New Jersey for criminal prosecution, without invoking the UCEL.  *Id.; see also Batten v. Gomez,* 324 F.3d 288, 294 (4th Cir. 2003) (holding that, where Batten voluntarily accompanied police to California after she was given the option of either voluntarily accompanying police or being arrested in North Carolina and detained pending formal extradition, there was no violation of the UCEL, which "permits a person who learns of criminal charges against her in another state to elect to travel voluntarily to that state to face the charges"); *Pierson v. Grant,* 527 F.2d 161, 165 (8th Cir. 1975) (holding that, where Pierson signed a waiver of extradition at the time he was released on parole in Missouri, and Missouri officials later returned Pierson from Iowa to Missouri based on the waiver, the waiver did not violate the UCEL and was knowingly made because "at the time it was signed [Pierson] had a general knowledge and understanding of what was involved in the waiver," even though he was not specifically advised as to the various rights surrendered under the waiver).[5]

In addition, the State correctly argues that this Court must presume the correctness of the Appellate Division's factual finding that Soto's waiver of extradition was knowing and voluntary.

---

[5] *Cf. Frisbie v. Collins,* 342 U.S. 519, 512 (1952) (holding that, where the defendant was forcibly abducted from Illinois to be tried in Michigan in violation of the Federal Kidnaping Act, the Kidnaping Act did not "bar[] a state from prosecuting persons wrongfully brought to it by its officers.")

*See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.   The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.")   Soto has not rebutted the presumption by clear and convincing evidence, and he has not argued or shown that the Appellate Division's adjudication of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," as required to obtain habeas relief under 28 U.S.C. § 2254(d)(2)).   *See Miller-El v. Dretke,* 545 U.S. at 240 (holding that a district court must "presume the [state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'"); *Rountree v. Balicki,* 640 F.3d 530, 541-42 (3d Cir. 2011) (habeas court is "bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.") (quoting *Simmons v. Beard,* 590 F.3d 223, 231 (3d Cir. 2009)).

Finally, even if Soto had demonstrated a violation of the UCEL, he would not be entitled to habeas relief under § 2254(d)(1) because he has not cited any Supreme Court precedent holding that a confession is inadmissible because the defendant was brought into a state in violation of the UCEL.   *Compare Kerr v. Illinois,* 119 U.S. 436, 444 (1886) (holding that even the forcible abduction of a defendant from Peru, outside the extradition treaty between Peru and the United States, provided "no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offense, and presents no valid objection to his trial in such court."); *Frisbie* at 511-12 ("[T]he power of a court to try a person for

12

crime is not impaired by the fact that he had been brought within the court's jurisdiction [from another state] by reason of a forcible abduction . . . .  There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will") *with Dunaway v. New York,* 442 U.S. 200 (1979) (holding that, where without probable cause to arrest, the police picked up Dunaway, drove him to police headquarters in a police car, questioned him in an interrogation room after providing the warnings required by *Miranda v. Arizona,* 384 U.S. 436 (1966), and obtained incriminating statements, the Fourth Amendment prohibited his detention and the confession was not admissible).

Soto is not entitled to habeas relief under Ground One because he has not shown that the adjudication of his challenge to the admission of his statement under the UCEL was contrary to, or an unreasonable application of Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence presented to the New Jersey courts.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

B.      Confrontation Clause (Ground Two)

In Ground Two, Soto argues that the trial court violated his rights under the Confrontation Clause of the Sixth Amendment when, over objection, the court allowed Ann Marie Perez (a friend of Ivelisa Figueroa) to testify that, on the day after the charged crimes, Ivelisa Figueroa told Perez that Figueroa had been accidentally shot when she and Soto tried to rob somebody.   Soto argued on direct appeal that admission of Figueroa's statement incriminating Soto, through the testimony of Perez, violated his rights under the Confrontation Clause.   (ECF No. 12-21 at 52.) Specifically, Perez testified that Figueroa told Perez that "she, Soto, and two other guys were going 'to rob somebody, and that something went wrong and she got shot.   And she showed me a

13

patch on her leg,'" but she refused to go to a hospital. *Soto,* 340 N.J. Super. at 64. The Appellate Division held that Figueroa's statement did not satisfy all three requirements for admission under the co-conspirator exception to the hearsay rule because it was not made in furtherance of the conspiracy, but held that its admission was harmless error. *Id.* at 65.

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend VI. This guarantee applies to both federal and state prosecutions. *See Pointer v. Texas*, 380 U.S. 400 (1965). "The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination." Delaware v. Van Arsdall,* 475 U.S. 673, 678 (1986) (citations and internal quotation marks omitted) (emphasis in original).

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has had a prior opportunity for cross-examination."[6] *Id.* at 53-54. *Crawford* does not govern Soto's Confrontation Clause claim because *Crawford* was not decided until three years after the Appellate Division decision on his Confrontation Clause clam in 2001 and, under § 2254(d)(1), "State-court decisions are measured against th[e Supreme] Court's precedents as of 'the time the state court renders its decision.'" *Pinholster,* 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)). *See Adamson v. Cathel,* 633 F.3d 248, 256 (3d Cir. 2011) (finding that

---

[6] The Court defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford*, 541 U.S. at 51 (citations and internal quotation marks omitted).

*Crawford* did not apply under § 2254(d)(1) because the Appellate Division, the highest state court decision reaching the merits of Adamson's Confrontation Clause claim, rendered its decision in 2000).  Moreover, *Crawford* is not retroactive to cases on collateral review.  *See Whorton v. Bockting,* 549 U.S. 406, 416 (2007).  Accordingly, Soto's claim is governed by *Ohio v. Roberts*, 448 U.S. 56 (1980), the relevant Supreme Court precedent as of 2001, wherein the Court held that the Confrontation Clause did not bar the admission of testimonial hearsay if the statement had adequate indicia of reliability, *i.e.*, fell within a "firmly rooted hearsay exception," or bore "particularized guarantees of trustworthiness."  *Id*. at 66.

However, because the Appellate Division denied relief on the Confrontation Clause claim on the ground that the error was harmless, to obtain relief under § 2254(d)(1), Soto must show that the Appellate Division's ruling - that the admission of Figueroa's statement was harmless error - was contrary to, or involved an unreasonable application of, clearly established Supreme Court holdings as of 2001, the time of the Appellate Division's decision.  As mentioned above, the Appellate Division found that, although the admission of Figueroa's incriminating statement violated Soto's confrontation rights, the error was harmless:

> We are convinced other proof of defendant's involvement in the conspiracy to rob Maghoub was overwhelming.  As noted defendant gave at least two confessions admitting his involvement in the robbery[, and] Tomoteo gave a statement to the police that he overheard defendant and the others bragging about the incident.  Thus, we conclude the admission of Perez's hearsay testimony was cumulative and played a minor role in the trial.  Any error in admitting Perez's statement was clearly harmless.

*Soto,* 340 N.J. Super. at 65.

Before (and after) *Crawford,* the Supreme Court had held that Confrontation Clause errors are subject to a harmless error analysis.  *See Van Arsdall*, 475 U.S. at 680-81 (rejecting argument

15

that Confrontation Clause violation is not subject to harmless error analysis); *Harrington v. California,* 395 U.S. 250 (1969) (holding that admission of confessions of the non-testifying co-defendants violated the Confrontation Clause, but was harmless error); *Wright v. Vaughn,* 473 F.3d 85, 93 (3d Cir. 2006) ("Evidentiary rulings in violation of the Confrontation Clause are subject to harmless error analysis.").   In this case, although the Appellate Division did not cite Supreme Court case law when it rejected Soto's Confrontation Clause claim on the ground of harmless error, "[a] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite our opinions."   *Mitchell v. Esparza,* 540 U.S. 12, 16 (2003). A state court "need not even be aware of our precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them."   *Id.* (citation and internal quotation marks omitted).

Moreover, "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht [v. Abhahamson,* 507 U.S. 619, 631 (1993)] …."   *Fry v. Pliler,* 551 U.S. 112, 121-22 (2007).   Under the *Brecht* standard, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'"   *Fry,* 551 U.S. at 116 (quoting *Brecht,* 507 U.S. at 631, and *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, *i.e.,* where the evidence is in virtual equipoise, the error is not harmless."   *O'Neal v. McAninch,* 513 U.S. 432, 435-36 (1995) (citations and internal quotation marks omitted).

In this case, the Appellate Division's finding that the admission of Figueroa's statement implicating Soto, through the testimony of Perez, did not have a substantial and injurious effect or influence in determining the jury's verdict, was not an unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(2).   In Soto's own statements to police, he admitted his involvement in robbing Maghoub, admitted that he had the shotgun when he entered Maghoub's home, admitted that Maghoub was badly beaten, and admitted that he had searched through Maghoub's pockets.   Given that Soto presented no defense witnesses or conflicting evidence, this Court concludes that the admission of Perez's hearsay statement concerning Soto's involvement in the robbery did not have a substantial and injurious effect in determining the jury's verdict.  *See Fry,* 551 U.S. at 121-22.   In addition, the New Jersey courts' application of the harmless error standard to Soto's Confrontation Clause claim was not contrary to, or an unreasonable application of clearly established Supreme Court precedent.  *See Van Arsdall*, 475 U.S. at 680-81; *Harrington,* 395 U.S. at 253-55.   Accordingly, he is not entitled to habeas relief on Ground Two.  *See Wilson v. Superintendent of SCI Huntingdon,* 480 F.App'x 669 (3d Cir. 2012) (holding that § 2254 relief was not warranted because the admission of co-defendant's redacted confessions in violation of the right of confrontation was harmless in light of Wilson's statement to a police informant that he had nailed the victim, and the absence of exculpatory evidence); *Robinson v. Shannon,* 461 F.App'x 101, 104-105 (3d Cir. 2012) (holding that admission of co-defendants' redacted statements and the reference to those statements as redacted in violation of Confrontation Clause was harmless where Robinson had confessed that he was involved in the robbery which led to the victim's death and other evidence established his presence at the scene of the murder and involvement in the robbery, and Robinson did not call any

witnesses in his defense); *Fogg v. Phelps,* 414 F.App'x 420, 426 (3d Cir. 2011) (holding that Fogg was not entitled to habeas relief on Confrontation Clause Claim because the record "does not leave us in grave doubt as to whether the error had a substantial and injurious effect on the jury's verdict," where there was evidence of the brutal nature of the murder, which was sufficient to support intent for first-degree murder); *Scott v. Bartkowski,* Civ. No. 11-3365 (SRC), 2013 WL 4537651 *9 (D.N.J. Aug. 27, 2013) (holding that Scott was not entitled to habeas relief on Confrontation Clause claim that the trial court improperly precluded defense counsel from questioning a witness on the primary witness's reputation for truthfulness, because the error did not have substantial and injurious effect or influence in determining guilt).

C.     Admission of Prior Inconsistent Statement Violated Due Process (Ground Three)

In Ground Three, Soto claims that the admission as substantive evidence of the prior inconsistent statements of Tomoteo Terron, the father of two of his co-defendants, violated Due Process.   As factual support, he asserts that when Timoteo Terron testified at trial, he denied giving a statement to the police or he indicated that the police and the assistant prosecutor forced him to make the statement.   (ECF No. 1 at 10.)   Soto further alleges that the trial judge admitted Timoteo's statements, which included what Figueroa, Robles, and Timmy Terron told him about the incident, as substantive evidence after conducting a hearing "because the judge found that the circumstances surrounding the statements had sufficient indicia of reliability and that Timoteo's testimony to the contrary was not credible."   *Id.*   The State argues that Soto is not entitled to habeas relief on Ground Three because the Appellate Division adjudicated the claim and Soto has not shown that the ruling was contrary to, or an unreasonable application of Supreme Court holdings, or involved an unreasonable factual determination.

18

Soto raised this due process claim on direct appeal, arguing that "[b]ecause the prior inconsistent statements of this witness did not meet the standards of reliability required by the Court in [*State v.*] *Gross,* [121 N.J. 1 (1990)], its erroneous admission as substantive evidence, and its likely impact on the verdict, denied defendant a fair trial and therefore requires a reversal." (ECF No. 12-21 at 59.)   The Appellate Division rejected the claim, finding that the trial judge's factfindings were supported by credible evidence in the record, and that the admission of Timoteo's inculpatory prior inconsistent statements as substantive evidence was proper under the New Jersey Rules of Evidence.   *See Soto,* 340 N.J. Super. 47, 69.

The State correctly argues that this Court must presume the correctness of the Appellate Division's factual findings that Timoteo's in-court testimony lacked credibility and that the testimony of the police officers who took the statements showed that Timoteo was not coerced or misled into giving the statements.[7]   *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.")   Soto has not rebutted the presumption by clear and convincing evidence, and he has not shown that the Appellate Division's adjudication of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

---

[7] The trial judge found "Tomoteo lacked credibility and found [the police officers] to be very credible.   He found Timoteo was not coerced into giving the statements and the statements were freely given."   *Soto,* 340 N.J. Super. at 69.   The Appellate Division held that the trial judge's findings were supported by sufficient credible evidence and that the judge had properly admitted the statements as substantive evidence.   *Id.*

presented in the State court proceeding," as required to obtain habeas relief under 28 U.S.C. §

2254(d)(2)).   *See Miller-El v. Dretke,* 545 U.S. at 240; *Rountree,* 640 F.3d at 541-42.

Moreover, the question of the admission of evidence is essentially a state law evidence

claim and "the Due Process Clause does not permit the federal courts to engage in a finely tuned

review of the wisdom of state evidentiary rules."   *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6

(1983).   In *Estelle v. McGuire*, 502 U.S. 62 (1991), the Supreme Court held that the state court's

admission, in petitioner's trial for murdering his infant daughter, of the testimony of two

physicians that the child had suffered prior child abuse did not violate due process, since the

evidence was relevant to show intent and "nothing in the Due Process Clause of the Fourteenth

Amendment requires the State to refrain from introducing relevant evidence simply because the

defense chooses not to contest the point."   *Id*. at p. 70.

Here, the Appellate Division determined that the written statements were properly

admitted under New Jersey law.   Even if that state evidentiary ruling was erroneous, it cannot

under the circumstances of this case form the basis of a federal habeas challenge under *Estelle*,

unless admission of the evidence violated federal due process.   *See Wilson v. Vaughn,* 533 F.3d

208, 213 (3d Cir. 2008) ("Admissibility of evidence is a state law issue.")   "To prevail on his due

process claim, [Soto] must prove that he was deprived of 'fundamental elements of fairness in [his]

criminal trial."   *Glenn v. Wynder,* 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada,*

504 U.S. 127, 149 (1992)) (citation and internal quotation marks omitted).   The Supreme Court

has "defined the category of infractions that violate 'fundamental fairness' very narrowly, based

on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due

Process Clause has limited application."   *Medina v. California,* 505 U.S. 437, 443 (1992).   "In

order to satisfy due process, [Soto's] trial must have been fair; it need not have been perfect." *Glenn,* 743 F.3d at 407 (citing *United States v. Hasting,* 461 U.S. 499, 508 (1983)).

Soto cites no Supreme Court case clearly establishing that the admission as substantive evidence of a prior inconsistent statement of a witness who testifies at trial violates due process. This Court finds that the New Jersey courts' adjudication of this due process claim challenging the admission of Timoteo's inconsistent written statement as substantive evidence was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See Ross v. District Attorney of the County of Allegheny,* 672 F.3d 198, 207 n.5 (3d Cir. 2012) (rejecting § 2254 petitioner's challenge to state court ruling concerning the admission of evidence on the ground that "federal habeas corpus relief does not lie for errors of state law.") (quoting *Swarthout v. Cooke,* 131 S.Ct. 859, 861 (2011) and *Estelle,* 502 U.S. at 67); *cf. Minett v. Hendricks*, 135 F.App'x 547, 553 (3d Cir. 2005) ("Minett cites no Supreme Court case clearly establishing the admission of 'other crimes' evidence constitutes a violation of federal fair trial rights").

D.    <u>Cumulative Effect of Errors Violated Due Process (Ground Four)</u>

In Ground Four, Soto contends that the cumulative effect of certain errors resulted in a denial of due process.   As factual support, he asserts that the cumulative effect of the following eight errors, all but three of which involved allegedly improper or erroneous jury instructions,[8] deprived him of due process:    (1) where Soto's statements to Officer Maldonado were in Spanish, the trial court erred by failing to instruct the jury that it should consider Maldonado's qualifications as an interpreter and that it "should receive with great caution Maldonado's interpretation of the

---

[8]  Two of those three alleged errors – the admission of Timoteo's prior inconsistent statements and the admission of Perez's testimony – are raised as separate grounds in this Petition.

alleged out-of court statements of petitioner, given Maldonado's interest in the outcome . . . and the always present risk of distortion when statements are translated from one language to another" (ECF No. 1 at 13); (2) the trial judge erred in allowing Maldonado "to read to the jury the statements written in Spanish on the *Miranda* rights Form that he had read to petitioner[, and t]he court-appointed interpreter did not interpret this testimony of Maldonado, but simply responded yes to the judge's question regarding whether Maldonado was reading the form accurately" (ECF No. 1 at 14); (3) the trial judge erred in admitting Perez's testimony containing statements made to her by Figueroa and Timoteo's prior inconsistent statement; (4) while the trial judge "instructed the jury that it should receive and weigh carefully the testimony about oral statements attributed to petitioner[, t]he trial judge failed, however, to apply this instruction to evidence of all oral statements" (ECF No. 1 at 15); (5) although the trial judge "instructed the jury that it should first find that petitioner had in fact made the statements Detective Maldonado attributed to petitioner and then determine if the statements were credible[, t]he trial judge failed, however, to apply this instruction to all of the out-of-court statements attributed to petitioner" (ECF No. 1 at 15-16); (6) "Because the sons of Timoteo Terron, Elvis and Timmy, were charged with petitioner . . , the trial judge should have instructed the jury to consider, in determining the credibility and probative worth of the prior inconsistent statements of Timoteo, whether Timoteo's connection to the action by virtue of his sons' involvement gave Timoteo a motive to fabricate his out-of-court statements" (ECF No. 1 at 16); (7) Timoteo's out-of-court statement, "I told [my sons] before that if they kept hanging with [petitioner] they were going to get busted and go to jail," was irrelevant and inflammatory (ECF No. 1 at 16); (8) the trial judge improperly instructed the jury to consider as evidence of consciousness of guilt "the evidence that petitioner had given police a false name[, but

t]here was, however, no such evidence presented" (ECF No. 1 at 16).   The State argues that Soto is not entitled to habeas relief on these issues because the Appellate Division's rejection of these claims was not contrary to, or an unreasonable application of any holding of the Supreme Court.

Soto raised this cumulative error due process claim on direct appeal in point one of his *pro se* supplemental briefs67.   (ECF No. 12-22.)   The Appellate Division rejected all of Soto's *pro se* arguments in the following brief paragraph:

> Defendant lists eight alleged trial errors and contends their cumulative effect deprived him of a fair trial.   Three of the errors – the third, sixth, and seventh – are discussed in Points II and III, above.   The remaining five alleged errors concerning Maldonado's translating for defendant, the jury instructions regarding out-of-court statements, and the jury instruction on the inference to be accorded defendant's use of a false name, are without merit and require no further discussion.

*Soto,* 340 N.J. Super. at 72-73.

While the Third Circuit has discussed the notion that cumulative errors may violate due process when they undermine the reliability of the verdict,[9] this Court's research indicates that the Supreme Court has not clearly established that habeas relief is warranted on the basis of alleged

---

[9] *See Collins v. Secretary of Pa. Dept. of Corrections,* 742 F.3d 528, 543 (3d Cir. 2014) (holding that Collins procedurally defaulted his claim that cumulative errors deprived him of due process where the "cumulative error claim was not presented to the Pennsylvania Supreme Court as an individual claim for relief"); *Fahy v. Horn,* 516 F.3d 169, 205 (3d Cir. 2008) (holding, *inter alia,* that given the "weighty evidence of Fahy's guilt in the record," including his detailed confession, the cumulative errors cited by Fahy did not deprive him of due process because the verdict was not "unreliable"); *Albrecht v. Horn,* 471 F.3d 435, 468 (3d Cir. 2006) (noting that "[c]umulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice,'" but holding that "Albrecht has not shown that the cumulative prejudice resulting from the errors we have identified undermined the reliability of the verdict") (quoting *Brecht,* 507 U.S. at 637); *Marshall v. Hendricks,* 307 F.3d 36, 94 (3d Cir. 2002) (holding, *inter alia,* that "even were we to cumulate all the claimed errors and superimpose them over the extensive trial proceedings, given the quantity and quality of the totality of the evidence presented to the jury, we could not conclude that the New Jersey Supreme Court unreasonably applied Supreme Court precedent or unreasonably determined the facts in making its ruling").

errors in instructions and in the admission of evidence.   To be sure, in *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court reversed the conviction of Chambers for murdering a police officer on the ground that "the cumulative effect" of several evidentiary rulings denied due process under the Fourteenth Amendment because they "frustrat[ed] his efforts to develop an exculpatory defense" that another person – Gable McDonald – had shot and killed the police officer.   *Id.* at 290 n.3.   Specifically, the trial court denied Chambers' request to cross-examine McDonald as an adverse or hostile witness and sustained the state's hearsay objection to the admission of the testimony of three witnesses who would have testified that McDonald had confessed, on three separate occasions shortly after the crime, to shooting the police officer.   The Supreme Court held that "the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process."   *Id.* at 302-03.   However, the Court emphasized that, "in reaching this judgment, we establish no new principles of constitutional law . . . .   Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial."   *Id.*

Subsequent Supreme Court cases have interpreted *Chambers* narrowly.   For example, in *United States v. Scheffer,* 523 U.S. 303, 308 (1998), citing *Chambers*, the Supreme Court observed that "we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused."   In *Scheffer,* the Court rejected defendant's claim that a per se rule against the admission of polygraph evidence in a court martial violated the Fifth or Sixth Amendment rights of the accused to present a defense. The *Scheffer* Court noted that *Chambers* "found a due process violation in the combined

24

application of Mississippi's common-law 'voucher rule,' which prevented a party from impeaching his own witness, and its hearsay rule that excluded the testimony of three persons to whom that witness had confessed," *id.* at 316, and opined that "*Chambers* therefore does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence." *Id.* In *Montana v. Egelhoff,* 518 U.S. 37, 53 (1996), the Court held that due process does not prevent a state from disallowing consideration of voluntary intoxication when a defendant's state of mind is at issue, and observed that "the holding of *Chambers* – if one can be discerned from such a fact-intensive case – is certainly not that a defendant is denied 'a fair opportunity to defend against the State's accusations' whenever 'critical evidence' favorable to him is excluded, but rather that erroneous evidentiary rulings can, in combination, rise to the level of a due process violation." *Id.* at 53.

The New Jersey courts' adjudication of Soto's cumulative errors claim was not contrary to, or an unreasonable application of *Chambers* because *Chambers* did not "clearly establish" that the cumulative effect of alleged errors in instructions and in the admission of evidence denied due process. While *Chambers* can be "viewed as 'clearly establish[ing]' . . . that a state evidence rule may not severely restrict a defendant's right to put on a defense if the rule is entirely without any reasonable justification," *Williams v. Price,* 343 F.3d 223, 232 (3d Cir. 2003), Soto does not contend that he was denied a meaningful opportunity to present a defense as a result of the exclusion of reliable exculpatory evidence through the application of evidentiary rules. [10]

---

[10] *See United States v. Flemming,* 223 F.App'x 117, 126 n.5 (3d Cir. 2007) (noting that to establish a constitutional violation under *Chambers,* "a defendant must show:   (1) he was deprived of the opportunity to present evidence in his favor; (2) the excluded testimony would have been material

Therefore, given the absence of Supreme Court law clearly establishing that the cumulative effect of alleged errors in jury instructions and in the admission of evidence violates due process, and that Soto has not argued that his right to put on a defense was severely restricted, Soto has not shown that habeas relief is warranted under § 2254(d)(1).

E.    Due Process:   Felony Murder Predicate Crime (Ground Five)

Soto argues in Ground Five that he was denied due process because the jury was instructed that "either robbery, burglary, or kidnapping could be the predicate felony underlying a conviction of felony murder[, but t]here was, however, insufficient evidence to support a conviction of kidnapping [and] the jury did not indicate and the record does not otherwise reveal which of the three submitted predicate felonies the verdict was based on."   (ECF No. 1 at 18.)

On direct appeal, Soto argued that the trial court erred in failing to merge the kidnapping and robbery convictions into the felony murder conviction for the purposes of sentencing, as the judge did with the burglary conviction, because there was no way to determine which of the three alternative predicate felonies – robbery, burglary, or kidnapping - the jury found to be the predicate felony.   (ECF No. 12-21 at 68.)   The Appellate Division noted that, "where two felonies were committed in the context of a felony murder, only the one that is considered the predicate felony merges with it [and] the other survives for sentencing purposes," but held that the trial judge did not err in sentencing Soto separately for the two crimes of robbery and burglary because the jury convicted Soto of all three predicate crimes and he did not request a unanimity charge.   *Soto,* 340 N.J. Super. at 70.   However, in the same opinion, the Appellate Division reversed the kidnapping

and favorable to his defense; and (3) the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose").

conviction on the ground that the evidence did not support the conviction.  *Id.* at 75 ("Although defendant told Maghoub not to move, he did not listen.   The two men immediately entered into a struggle . . .   Whatever brief period of time Maghoub may have been confined was merely incidental to the other crimes for which defendant was convicted:   the burglary, robbery, aggravated assault, and felony.")

On post-conviction relief, Soto argued that trial counsel was constitutionally ineffective in failing to request a unanimity charge on the predicate felonies, in light of the Appellate Division's reversal of the kidnapping conviction, because the jury might have found that the felony murder conviction was predicated on the kidnapping charge.   (ECF No. 12-28 at 47-48.)   The Appellate Division affirmed the denial of this ground substantially for the reasons stated by the post-conviction relief court.   (ECF No. 25-1 at 2.)   Soto also argued that the felony murder conviction cannot stand because one of the three alternative felony murder predicates was not supported by the evidence, and the jury was not instructed to and did not declare which of the three felonies it chose as the predicate felony.   (ECF No. 25-1 at 8.)   The trial court rejected the claim as follows:

> This Court finds that this issue was addressed on direct appeal and is, therefore, barred under Rule 3:22-5.   Defendant was convicted not only of the kidnapping, which was later reversed, but also, convicted unanimously by the jury of burglary and robbery as well as the reversed kidnapping.

(ECF No. 12-20 at 22.)

This Court notes that the verdict sheet establishes that the jury found Soto guilty of felony murder, and defined this crime as follows:   "As to the charge of Felony Murder, that the defendant did cause the death of Mohamed Maghoub during the commission of, or attempt to commit, or flight after committing or attempting to commit robbery and or kidnapping and or burglary."

27

(ECF No. 12-21 at 80.)   Although the kidnapping conviction was reversed on direct appeal due to lack of evidence, the appellate court affirmed the convictions for robbery, burglary, and felony murder.   Soto does not cite in his submissions to this Court, and he did not cite in his briefs on direct appeal and on appeal from the denial of post-conviction relief, any Supreme Court case clearly establishing that due process requires the reversal of a conviction for felony murder, where one of three alternative predicates for a felony murder conviction is reversed, but the convictions on the two alternative predicate crimes are not reversed.   On appeal from the denial of post-conviction relief, Soto relied on *State v. Harris,* 141 N.J. 525, 563 (1995), for the proposition that a unanimity instruction is not required where each of the felonies alleged as predicates for the felony murder conviction involved distinct acts, the jury unanimously found the defendant guilty of each of the predicate felonies, and defendant did not request a unanimity charge.   (ECF No. 12-28 at 47.)   This Court has reviewed *Harris.*   In that case, Harris argued that "the mere conviction of the predicate offenses did not mandate defendant's conviction of felony murder," and that "the jury should have been charged that it had to agree 'unanimously on the predicate offenses which resulted in the victim's death.'"   *Harris,* 141 N.J. at 561.   The New Jersey Supreme Court rejected this argument because the jury found Harris guilty of each of the possible predicate felonies and he did not request a unanimity charge, but the court stated in *dicta* that "there could be concern about the lack of a specific unanimity instruction" if the jury had acquitted the defendant of one of the predicate felonies.   *Id.* at 563.

Habeas relief is not warranted on this ground because it concerns state law and "a mere error of state law is not a denial of due process."   *Swarthout v. Cooke,* 131 S.Ct. 859, 863 (2011); *see also Estelle,* 502 U.S. at 67-68 (emphasizing that "it is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions"); *Smith v. Horn,* 120 F.3d 400, 414 (3d Cir. 1997) ("[A] state court's misapplication of its own law does not generally raise a constitutional claim") (citations and internal quotation marks omitted); *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997) ("[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause.").   Soto has not shown that the New Jersey courts' adjudication of this claim was contrary to, or an unreasonable application of clearly established *Supreme Court* holdings.

F.     Prosecutorial Misconduct Violated Due Process (Ground Eight)

Soto argues that the prosecutor's comments deprived him of a fair trial.   Specifically, he asserts that the prosecutor improperly expressed her personal opinion that "unwanted force was used on the victim," that Ivelisa Figueroa's leg was injured, and that Timoteo's testimony was false; the prosecutor improperly referred "to her own abilities to understand a foreign language;" and she improperly vouched for the police officers and the credibility of Detective Maldonado. (ECF No. 1 at 23.)   The State argues that the prosecutor's comments did not violate due process.

Soto raised the prosecutorial misconduct claim in his petition for post-conviction relief and in his appellate brief, arguing that the prosecutor's misconduct was so egregious that it deprived Soto of a fair trial.   (ECF No. 12-28 at 57-61.)   The Appellate Division affirmed the trial court's ruling for the reasons expressed by the trial court.   (ECF No. 25-1 at 2.)   In considering this claim, the trial court noted that in summation defense counsel attacked the credibility of Detective Maldonado, as well as the accuracy of and circumstances surrounding Soto's statements and then stated:

> In response to that, of course, the prosecution, who goes after the defense . . . has to
> address this.   The prosecution asked the jury, "Do you think that Maldonado made

29

all of this up," in so many words . . . .   The matter was tried before the jury, and the question was brought up by the defense was, was the admissions of the defendant, which was, basically, the case, were they believable, so the prosecution addressed that . . . .   The issue was raised by the defense first and then was addressed by the prosecution as it had to do in doing their job as an advocate for the state's interest. I do not find that the statements of the – in fact, they weren't even objected to by trial counsel because he knew what he had done and said, and that the prosecution was, in fact, addressing it as they are entitled to do.   I do not find that there was a denial of due process and a fair trial by prosecutor's statements in summation.

(ECF No. 12-20 at 24-25.)

"The 'clearly established Federal law' relevant [to a prosecutorial misconduct claim] is [the Supreme Court's] decision in *Darden v. Wainwright*, 477 U.S. 168 . . . (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"   *Parker v. Matthews*, 132 S.Ct. 2148, 2153 (2012) (quoting *Darden*, 477 U.S. at 181 and *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).   As the Supreme Court further noted in *Donnelly v. DeChristoforo*, this occurs only if the misconduct constitutes a "failure to observe that fundamental fairness essential to the very concept of justice."   416 U.S. at 64.   It is not enough to show that the prosecutor's conduct was universally condemned.   *See Darden*, 477 U.S. at 181.   The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process.   *See Darden*, 477 U.S. at 182; *Donnelly*, 416 U.S. at 644; *accord Moore v. Morton*, 355 F.3d 95, 111 (3d Cir. 2001).

Vouching is a form of prosecutorial misconduct.   Improper vouching is "an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury."   *United States v. Walker*, 155 F.3d

30

180, 184 (3d Cir. 1998); *see also United States v. Lore*, 430 F.3d 190, 211 (3d Cir. 2005) (Vouching occurs when a prosecutor "(1) assures the jury that the testimony of a government witness is credible, and (2) . . . bases his assurance on either his claimed personal knowledge or other information not contained in the record").   The Supreme Court has observed that "[t]he prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers:

> such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 19 (1985).   However, where the "prosecutor's statement of his belief . . . contained no suggestion that he was relying on information outside the evidence presented at trial [and h]e supported his comment by referring to . . . testimony . . . when viewed in context, the prosecutor's remarks cannot be read as implying that the prosecutor had access to evidence outside the record."   *Id.; see also Walker*, 155 F.3d at 184 ("[W]here a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury [of] the credibility of the witness based on his own personal knowledge, the prosecutor is engaging in proper argument and is not vouching").

   "On habeas review, . . . prosecutorial misconduct such as vouching does not rise to the level of a federal due process violation unless it affects fundamental fairness of the trial . . .   The relevant question for a habeas court is whether those remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"   *Lam v. Kelchner*, 304 F.3d 256, 271

(3d Cir. 2002) (quoting *Darden*, 477 U.S. at 180-81) (citation omitted); *accord Parker,* 132 S.Ct. at 2153-55.

In this case, Petitioner challenges the prosecutor's expression, in summation, of her personal opinion that "unwanted force was used on the victim," and her comment that Ivelisa Figueroa's leg was injured, along with her statement that Timoteo's testimony at trial (retracting his prior inconsistent statements) was false.   In addition, according to Petitioner, the prosecutor improperly referred to her own foreign language abilities.   However, Petitioner has not pointed to any Supreme Court precedent that would compel a finding that these sorts of statements constitute prosecutorial misconduct.

Regarding vouching, as noted above, the Supreme Court's decision in *Young* was a clearly established precedent at the time of the state court rulings.   Petitioner takes issue with the prosecutor's statement that "there was not one shred of evidence to prove that David Maldonado made up this statement …."   (Petition, ECF No. 1 at 23).   Petitioner also points to a comment by the prosecutor that the government "did a good job on this case."   *Id.*   The prosecutor's comments about Maldonado and the other police officers do not insinuate that the prosecutor had access to evidence outside the record, "nor does it contain a personal assurance of veracity."   *U.S. v. Vaghari*, 500 F. App'x 139, 145-46 (3d Cir. 2012).   Furthermore, the concerns underlying the vouching doctrine are not implicated by these statements.   Because the prosecutor did not refer to evidence outside the record, there is no concern that defendant could have been tried on the prosecutor's opinion rather than the jury's view of the evidence presented at trial.   Therefore, these statements would not be considered impermissible vouching under *Young*.   *See U.S. v. Berrios*, 676 F.3d 118, 133-34 (3d Cir. 2012) (finding no vouching where prosecutor did not point

to evidence outside the record and, as a result, "the jury could not glean anything about the prosecutor's personal knowledge ….").

More importantly, even if the prosecutor's comments are viewed as troublesome, the comments did not so infect Soto's trial with unfairness as to make the resulting conviction a denial of due process under the Supreme Court precedents of *Darden* or *Donnelly*.  As noted above, there was strong evidence of Soto's guilt, including his own detailed statement of his actions in furtherance of the crimes.  *Accord Gooding v. Wynder*, 459 F. App'x 83 (3d Cir. 2012) (affirming rejection of prosecutorial misconduct claim where statements were "objectionable" but "there was significant evidence of [the petitioner's] guilt.")  The New Jersey courts' rejection of the prosecutorial misconduct claims was not contrary to, or an unreasonable application of Supreme Court precedent.  *See Lam*, 304 F.3d at 272.

G.    Ineffective Assistance of Counsel (Grounds Six and Seven)

Soto claims that counsel was constitutionally ineffective in the following ways:   on three occasions, trial counsel failed to use a Spanish language interpreter to discuss strategy with Soto (who spoke only Spanish), and counsel used co-defendant Robles as an interpreter (Ground Six), and trial counsel failed to adequately consult with Soto prior to and during trial (Ground Seven).

Soto presented his ineffective assistance of counsel claims in his petition for post-conviction relief.  After hearing oral argument, the trial court denied relief without conducting an evidentiary hearing.  Soto appealed.  The Appellate Division affirmed the trial court's ruling that Soto failed to establish a prima facie ineffective assistance of counsel claim with respect to the use of co-defendant Robles as interpreter:

> PCR counsel argued that defendant's trial counsel was ineffective because he used co-defendant Martin Robles as an interpreter "on at least three separate occasions."

33

During the hearing, it was determined that Robles interpreted conversations between defendant and his trial attorney on three occasions between September and December 1996.  According to Robles, the discussions involved the following matters:  (1) defendant "would be receiving a translator to assist during interviews," (2) "the case was not looking good for the [S]tate," and (3) there was a court order that allowed "the [S]tate to have some of the defendant's hair taken for DNA samples."  In rejecting defendant's claim that he was prejudiced by the use of Robles as an interpreter, the court noted that defendant was indicted in October 1996, and his trial began in January 1998.  Thus, the trial court correctly concluded that defendant had failed to establish a prima facie claim of ineffective assistance of counsel based on Robles's limited role as an interpreter because Robles interpreted relatively insignificant discussions that took place more than a year before defendant's trial.

(ECF No. 25-1 at 9.)[11]

However, the Appellate Division remanded Soto's claim that trial counsel failed to adequately consult with him because "PCR court did not make specific findings regarding this issue, and the State does not object to a remand so that the PCR Court can state its findings of fact and conclusions of law 'regarding the adequacy of defense counsel's contacts with defendant.'" (ECF No. 25-1 at 11.)

On June 19, 2008, the trial court conducted an evidentiary hearing.  (ECF No. 25-3.)  W. Les Hartman, Soto's trial attorney, and Soto testified, arguing that trial counsel was ineffective in failing to properly communicate with him before and during the trial.  The trial court issued an oral opinion on the same date denying relief on the grounds that counsel was not deficient and, even if counsel was deficient, Soto did not show a reasonable probability that the outcome of the proceeding would have been different.  (ECF No. 25-4 at 5-7.)  Specifically, as to deficient performance, Soto testified that counsel did not consult with him outside the courtroom, except

---

[11]  On April 21, 2008, the New Jersey Supreme Court denied Soto's petition for certiorari from this portion of the Appellate Division ruling.  (ECF No. 25-2.)

when he used co-defendant Robles as an interpreter. *Id.* But the trial judge believed counsel's testimony that he met with Soto, together with a Spanish interpreter from the Public Defender's Office, on several occasions at Mercer County Jail and whenever there was a court appearance, such as a motion or a status conference.[12] *Id.* The trial judge stated that he

> believe[d] that [defense counsel] met with his client every day in court with the help of an interpreter . . . . He also said that [he] discuss[ed] the case with him to prepare a defense and [he] met him at the Mercer County Jail. I cannot find, with all due respect, that [defense counsel] would lie about that . . . [T]his Court provided two interpreters [during the trial], and in court [defense counsel] said, [e]very time we were there, we communicated about the case.

(ECF No. 25-4 at 6-7.)

As to prejudice, the trial judge found that, even if defense counsel may have been deficient, "I don't find that the result would have been any different because the evidence in this case was overwhelming [and] the Appellate Division said so as well on the direct appeal." *Id.* at 7. The Appellate Division affirmed the order denying the post-conviction relief application. (ECF No. 25-4.) After quoting from the trial judge's findings, the Appellate Division determined that "the PCR court's findings and conclusions are adequately supported by sufficient credible evidence [and] the court correctly applied the governing legal principles set forth in *Strickland v. Washington,* 466 U.S. 668." *Id.* at 8.

As the trial and appellate courts acknowledged in Soto's case, the Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and

---

[12]     Petitioner also contends in his Petition that he would have discussed other witnesses with defense counsel if Robles was not serving as his translator. The trial judge's finding that defense counsel met with Soto, together with an interpreter, throughout the pre-trial stage, is a state court finding—entitled to deference by this Court—that directly contradicts Soto's contention.

counsel can deprive a defendant of the right by failing to render adequate legal assistance.   *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).   A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.   *Id.* at 687.   First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."   *Id*. at 687-88.   To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."   *Id*. at 690.   The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]"   *Hinton v. Alabama,* 134 S.Ct. 1081, 1083 (2014) (*per curiam*).   To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."   *Strickland*, 466 U.S. at 693. [13]   To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission."   *Hinton,* 134 S.Ct. at 1083.   "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."   *Id.* at 1089 (quoting *Strickland,* 466 U.S. at 695).

In this case, the trial court and Appellate Division used the clearly established Supreme Court precedent to consider Soto's ineffective assistance of counsel claims, and nothing before this Court indicates that the application of the *Strickland* prongs to Soto's claims was unreasonable or even incorrect.   In addition, Soto has not shown that the findings of fact with respect to

---

[13] The reasonable probability standard is less demanding than the preponderance of the evidence standard.   *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

counsel's performance were unreasonable in light of the evidence presented in the post-conviction relief proceeding.  Moreover, whether or not counsel met with Soto frequently enough, and whether or not Robles accurately interpreted the conversations between Soto and defense counsel on three occasions two years prior to the trial, the record in this case demonstrates that the evidence of Soto's guilt, which included Soto's detailed description of the events surrounding the crimes, was overwhelming.   Accordingly, the New Jersey courts' conclusion that Soto failed to establish that there is a reasonable probability that the outcome of the proceeding would have been different, but for counsel's deficient performance, was not contrary to, or an unreasonable application of *Strickland's* prejudice prong.  Soto is not entitled to habeas relief pursuant to § 2254(d)(1) or (d)(2) on his ineffective assistance of counsel claims.

H.      Certificate of Appealability

Soto has not made a substantial showing of the denial of a constitutional right.   Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B).   *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

**V.   CONCLUSION**

This Court dismisses the Petition with prejudice and denies a certificate of appealability.


  s/Freda L. Wolfson
**FREDA L. WOLFSON, U.S.D.J.**


DATED:   September 30, 2014

37